## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IVY CREEK OF TALLAPOOSA LLC d/b/a LAKE MARTIN COMMUNITY HOSPITAL, and ELMORE COMMUNITY HOSPITAL RURAL HEALTH ASSOCIATION d/b/a ELMORE COMMUNITY HOSPITAL, on behalf of themselves and all others similarly situated, | Case No.   2:21-cv-1640 |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | DEMAND FOR JURY TRIAL |
| v. | |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC, | |
| Defendants. | |

Plaintiffs Ivy Creek of Tallapoosa LLC d/b/a Lake Martin Community Hospital ("Lake Martin Community Hospital") and Elmore Community Hospital Rural Health Association d/b/a Elmore Community Hospital ("Elmore Community Hospital") (collectively, "Plaintiffs"), on behalf of themselves, the class, and all others similarly situated as defined below, for their complaint against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

### INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed nationwide class of institutional purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous

Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.    On April 26, 2021, Philips disclosed that the PE-PUR Foam used in certain devices it manufactured may degrade.  On June 14, 2021, Philips issued a recall (the "Recall") of devices containing PE-PUR Foam, noting that it had determined that the PE-PUR Foam was at risk for degradation, resulting in the off-gassing of certain chemicals, and the release of particles which may enter the device's pathway and be inhaled or ingested by users of such devices.  Philips recommended that patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.    On July 22, 2021, the United States Food and Drug Administration classified the recall of Philips devices containing PE-PUR Foam as a Class 1 recall, the most serious type of recall which is reserved for recalls of devices that may cause serious injuries or death.

4.    Plaintiffs purchased Philips CPAP, BiPAP, or mechanical ventilator devices subject to the Recall prior to June 14, 2021.  Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices were recalled by Philips because of the presence of PE-PUR Foam that could break down into small airborne particles and/or off-gas chemicals, rendering the devices defective and not fit for use by Plaintiffs' patients.  Plaintiffs have been advised by Philips to discontinue use of their devices.  Plaintiffs have had to incur significant out-of-pocket costs to replace the devices.

5.    Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of express warranty, breach of implied warranties, and fraud, in connection with Philips' manufacture, marketing, and sales of Recalled devices on behalf of themselves and a nationwide class.  Defendants have also been unjustly enriched because they received a benefit in the form of

compensation from Plaintiffs for the Recalled devices on behalf of themselves and the proposed nationwide class.

## PARTIES

6.      Plaintiff Lake Martin Community Hospital is an Alabama Limited Liability Company with its principal place of business in Tallapoosa County, Alabama.

7.      Plaintiff Elmore Community Hospital is an Alabama Non-Profit Corporation with its principal place of business in Elmore County, Alabama.

8.      Defendant Royal Philips is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands.  Royal Philips is the parent company of Philips NA and Philips RS.

9.      Defendant Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.  Philips NA is a wholly-owned subsidiary of Royal Philips.  Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

10.      Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296.  Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics").  Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of

---

[1]      *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed November 10, 2021).

the proposed Class exceed $5,000,000.00, exclusive of interest and costs, and Plaintiffs and most members of the proposed Class are citizens of a state different from Defendants.

12.    Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. §1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

13.    The Court has personal jurisdiction over the Defendants.  Defendants transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District.  The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons and entities residing in, located in, or doing business throughout the United States, including in this District.

## **FACTUAL BACKGROUND**

I.    **Continuous Positive Airway Pressure Therapy**

14.    Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea.  CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

15.    Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle.  These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses.  The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide.  If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from

sleep so that the individual's airway can reopen.  Often, these interruptions are so brief that the individual will not remember.  Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health.  CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

## II.     <u>Bi-Level Positive Airway Pressure Therapy</u>

16.     Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea.  Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway.  BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels - inspiratory and expiratory - of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device.  The inspiratory positive airway pressure assists a person as a breath is taken in.  Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out.  BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

## III.    <u>Mechanical Ventilation</u>

17.     Mechanical ventilation treatment helps people breathe when they find it difficult or are unable to breathe on their own.  Mechanical ventilators push airflow into patients' airway and lungs to help them breathe.  Mechanical ventilation can be invasive or non-invasive.  Invasive mechanical ventilation involves inserting a tube into a patient's airway and is usually performed

in the intensive care unit in a hospital or a long-term care setting. Non-invasive mechanical ventilation can be used at home.

## SUBSTANTIVE ALLEGATIONS

18. Philips developed, marketed, and sold a lineup of CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands, of dollars. Philips has sold millions of these devices in the United States.

## IV.    Philips' Sleep & Respiratory Care Devices Were Endangering its Users

19. On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

20. Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam

---

[2]    Press Release, PHILIPS, *First Quarter Results* (Apr. 26, 2021), https://www.philips.com/a-w/about/news/archive/corpcomms/news/press/2021/philips-first-quarter-results-2021.html    (accessed November 10, 2021).

component in these devices."[3]  Specifically, Philips announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4]  In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

21.    The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
|---|---|
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

---

[3]    Press Release, PHILIPS, *Philips issues recall notification to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, June 14, 2021, https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed November 10, 2021).

[4]    *Id.*

[5]    Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, June 14, 2021, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed November 10, 2021).

[6]    Press Release, *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS, June 14, 2021, https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
| --- | --- |
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

22.     According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following:  "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic carcinogenic affects."[8]  Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

## V.    The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless

23.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through

---

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

24.    The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless.  Purchasers of the Recalled Devices have had to discontinue their use and pay for another expensive device.

25.    Recognizing this, Philips issued the following advice regarding the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"

*For Health Care Providers and Facilities*

- Follow the recommendations above for the affected devices used in health care settings.
- Review the recommendations above with patients who use the affected devices.
- Service affected devices and evaluate for any evidence of foam degradation.[11]

26.    As a result of the above, Plaintiffs and the Class have and will continue to undertake considerable expense replacing the Recalled Devices.

**VI.    <u>Philips Unreasonably Delayed its Recall</u>**

27.    Philips has not disclosed when it first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath

---

[10]    *Id.* (emphasis in original).

[11]    *Id.* (emphasis in original).

circuit (extending from the device outlet, humidifier, tubing, and mask)."[12]  However, given the fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it is unlikely that Defendants only recently learned of these issues.

28.    Several facts support the assertion that Philips knew of the issue of the degradation of PE-PUR foam in advance of issuing the recall.  First, Philips' own language admits that the recall was issued in response to "several complaints" it had received regarding black particles and debris in the airways of the Recalled Devices.  Second, posts on message boards and YouTube channels such as the website apneaboard.com and the YouTube channel *CPAP Reviews* complained about problems now known to be consistent with the degradation of PE-PUR foam, including black particles in the airways of the Recalled Devices.

29.    Thus, as a result of user reports, Philips was aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and sell the Recalled Devices with such awareness for a significant period of time.  During this period, Philips unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of developing adverse health effects, including cancer.

30.    In fact, it was only after the early April 2021 release of the Philips Respironics DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that Philips publicly admitted the problems with the Recalled Devices in a regulatory filing.  As detailed above, it was not for another seven weeks that Philips officially recalled the Recalled Devices.

---

[12]    Press Release, *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS, https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed November 10, 2021).

**VII.    Philips' Recall Provides Little-to-No Relief to Class Members**

31.    As part of its announcement of the recall on June 14, 2021, Philips announced that it would be implementing "a comprehensive repair and replacement program for the affected devices" as follows:

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.[13]

32.    As the above language makes clear, Philips did not intend to replace the Recalled Devices with Philips' newly manufactured DreamStation 2 devices that contain a different foam and are therefore not affected by the recall (although individuals could always purchase a new Philips DreamStation 2 on their own), but instead intended to switch out the dangerous PE-PUR Foam in each Recalled Device. As events have already shown, this is a time-consuming process that has left, and will continue to leave Recalled Device users without use of their devices for untold periods of time.

33.    As implemented to date, the "repair and replacement" program has not repaired a single Recalled Device. Recalled Device users seeking to have their devices repaired or replaced are asked to register their devices on the Philips website, but are provided only with a registration

---

[13]    *Id.*

number and no information as to when they can expect their Recalled Devices to be repaired. Upon information and belief, Philips has not provided *any* guidance to *anyone* as to when Recalled Devices will be repaired.

34.    It was not until September 1, 2021, over 2 1/2 months after officially announcing the recall, that Philips announced it had begun to implement its repair and replacement program.[14] While some users have had replacement devices shipped to them, upon information and belief, no machines have been repaired.  Further, Philips has not provided guidance as to who will receive replacement devices or will have their devices repaired, only stating that some individuals will have their devices "rework[ed]" and that others will have their devices replaced.[15]

**VIII.    Plaintiff Lake Martin Community Hospital**

35.    Plaintiff Lake Martin Community Hospital is an Alabama Limited Liability Company with its principal place of business in Tallapoosa County, Alabama.

36.    Plaintiff Lake Martin Community Hospital acquired one or more Recalled Devices without notice or knowledge of the Recalled Devices' defects or potential health risks.

37.    Plaintiff Lake Martin Community Hospital regularly used one or more Recalled Devices to treat its patients' medical conditions until learning of Philips' recall of the Recalled Devices.

38.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Lake Martin Community Hospital's Recalled Devices are now worthless.

---

[14]    Press Release, PHILIPS, *Philips starts repair and replacement program of first-generation DreamStation devices in the US in relation to earlier announced recall notification*, Sept. 1, 2021, *available at* https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210901-philips-starts-repair-and-replacement-program-of-first-generation-dreamstation-devices-in-the-us-in-relation-to-earlier-announced-recall-notification.html. (accessed November 10, 2021).

[15]    *Id.*

39.     Plaintiff Lake Martin Community Hospital therefore seeks a refund of its out-of-pocket expenses relating to the acquisition and use of its Recalled Devices, non-defective replacement devices, and all other appropriate damages.

## IX.    Plaintiff Elmore Community Hospital

40.     Plaintiff Elmore Community Hospital is an Alabama Non-Profit Corporation with its principal place of business in Elmore County, Alabama.

41.     Plaintiff Elmore Community Hospital acquired one or more Recalled Devices without notice or knowledge of the Recalled Devices' defects or potential health risks.

42.     Plaintiff Elmore Community Hospital regularly used one or more Recalled Devices to treat its patients' medical conditions until learning of Philips' recall of the Recalled Devices.

43.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Elmore Community Hospital's Recalled Devices are now worthless.

44.     Plaintiff Elmore Community Hospital therefore seeks a refund of its out-of-pocket expenses relating to the acquisition and use of its Recalled Devices, non-defective replacement devices, and all other appropriate damages.

## X.    DISCOVERY RULE TOLLING

45.     Plaintiffs and the Class had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

46.     Neither Plaintiffs nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein.  Further, Plaintiffs and members of the Class did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

47.     For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the Class.

## XI.    FRAUDULENT CONCEALMENT TOLLING

48.     By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the Class.

49.     Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and the Class.  Plaintiffs and the Class were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct.  For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or the Class should be tolled.

## <u>CLASS ACTION ALLEGATIONS</u>

50.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

51.     Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

> All healthcare providers in the United States and its territories which, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for business use, and not for resale (the "Class").

52.     Plaintiffs reserve the right to modify or refine the definition of the Class based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

53.     Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants and

Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

54.    **Ascertainability**.  The proposed Class is readily ascertainable because it is defined using objective criteria such that Class members can determine if they are part of the Class. Further, the Class can be readily identified through records maintained by Defendants.

55.    **Numerosity (Rule 23(a)(1))**.  The proposed Class is so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class, as herein identified and described, is not known, but sales figures indicate that healthcare providers have purchased thousands of the Philips Recalled Devices.

56.    **Commonality (Rule 23(a)(2))**.  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Class;

- whether Defendants knew or should have known of the defects associated with the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive Plaintiffs and the Class;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants have been unjustly enriched;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

57.    **Typicality (Rule 23(a)(3))**.  Plaintiffs' claims are typical of the claims of the other members of the proposed Class.  Plaintiffs and members of the Class suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class.

58.   **Adequacy (Rule 23(a)(4))**.   Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class.   Plaintiffs have retained counsel competent and experienced in complex litigation and class actions.   Plaintiffs have no interest that is antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.   Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class.

59.   **Substantial Benefits**.   This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.   The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.   This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.   Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

60.   Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY
### On Behalf of the Class

62.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63.     Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiffs and the Class.

64.     Philips expressly warranted, advertised, and represented to Plaintiffs and the Class that the Recalled Devices were safe and appropriate for human use.

65.     Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Recalled Devices.

66.     Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class.  Plaintiffs and the Class relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

67.     Philips' Recalled Devices do not conform to Philips' advertisements, warranties, and representations in that they were unfit for use, are not safe, and defective.

68.     Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to purchasers like Plaintiffs and the Class, when their use had dangerous effects and was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for use as marketed by Philips.

69.     Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class or their patients of the dangerous PE-PUR Foam used in the Recalled Devices.

70.     Instead, Philips concealed the defects associated with the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use.  Philips thus utterly failed to ensure that the material representations were true.

71.     The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class.  The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class at the time of purchase of the Recalled Devices.

72.     As manufacturers, marketers, advertisers, distributors, and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

73.     In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class to rely on such representations.

74.     Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class reasonably relied upon such representations in purchasing the Recalled Devices.

75.     All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class.

76.     Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here.  Philips was placed on reasonable notice of the defects associated with the PE-PUR Foam in the Recalled Devices and that it was unsafe.  Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the Recalled Devices but failed to do so until now.

77.     As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class have been damaged because they purchased a defective product that was not fit for use.  Plaintiffs and members of the Class did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

78.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### On Behalf of the Class

79.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

80.     Philips are merchants engaging in the sale of goods to Plaintiffs and the Class.

81.     There was a sale of goods from Philips to Plaintiffs and the Class.

82.    At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use.  Plaintiffs and the Class relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

83.    Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was not accompanied by the disclosure of the defects associated with the Recalled Devices and the risk of adverse health effects that do not conform to the packaging.

84.    Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was not accompanied by the disclosure of the defects associated with the Recalled Devices and the risk of developing adverse health effects that do not conform to the packaging.

85.    Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

86.    Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

87.     As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

88.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION
### On Behalf of the Class

89.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.     Philips falsely represented to Plaintiffs and the Class that the Recalled Devices were fit for use.

91.     Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Recalled Devices.

92.     Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were therefore defective and that could cause adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.  Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead Plaintiffs and the Class.

93.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased Recalled Devices detriment.  Given the deceptive manner in which Philips advertised, represented,

and otherwise promoted the Recalled Devices, Plaintiffs' and the Class' reliance on Philips' misrepresentations was justifiable.

94.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the defects and the health risks, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

95.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION
### On Behalf of the Class

96.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

97.    Philips concealed from and failed to disclose to Plaintiffs and the Class of the defects associated with the Recalled Devices and the use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

98.    Philips was under a duty to disclose to Plaintiffs and the Class the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

99.    The facts concealed or not disclosed by Philips to Plaintiffs and the Class were material in deciding whether to purchase Recalled Devices.

100.    Plaintiffs and the Class justifiably relied on the Philips' omissions to their detriment.  The detriment is evident from the true quality, characteristics, and risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

101.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

102.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**NEGLIGENT MISREPRESENTATION**
**On Behalf of the Class**

103.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

104.    Philips had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

105.    Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

106.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips.  Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects that do not conform to the packaging and labeling; (2) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (3) the Recalled Devices were otherwise not as warranted and represented by Philips.

107.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known they contained PE-PUR Foam that were defective and could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

108.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**UNJUST ENRICHMENT**
**On Behalf of the Class**

109.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

110.    Plaintiffs and the Class conferred substantial benefits on Philips through their purchase of the Recalled Devices.  Philips knowingly and willingly accepted and enjoyed these proceeds from the sales of their Recalled Devices and obtained benefits from Plaintiffs and the Class.

111.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class were given with the expectation that the Recalled Devices would be fit for use and

have the qualities, characteristics, and suitability for use represented and warranted by Philips when they were not. As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

112.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class.

113.    Plaintiffs and the Class are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

114.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A.  An order certifying this action and the Class requested herein as a class action, designating Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel to the Class;

B.  An order declaring that Defendants' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; and (iv) fraud by omission, and that Philips is liable to Plaintiffs and members of the Class, as described herein, for damages arising therefrom;

C.  An order declaring that Defendants have been unjustly enriched by Plaintiffs through their purchases of the Recalled Devices;

D.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

E.  A judgment awarding Plaintiffs and members of the Class all appropriate damages, in an amount to be determined at trial;

F.  A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate including, but not limited to, restitution, disgorgement, and requiring Defendants to develop, implement, and maintain a medical monitoring program for members of the Class.

G.  A judgment awarding Plaintiffs and members of the Class prejudgment and post-judgment interest, as permitted by law;

H.  A judgment awarding Plaintiffs and members of the Class costs and fees, including attorneys' fees, as permitted by law; and

I.  Grant such other legal, equitable, or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED:        November 11, 2021                Respectfully submitted,

*s/ Kelly K. Iverson*
Kelly K. Iverson
Edwin J. Kilpela, Jr.
Kathleen P. Lally
Elizabeth Pollock-Avery
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
kelly@lcllp.com
ekilpela@lcllp.com
kathleen@lcllp.com
elizabeth@lcllp.com

Joseph P. Guglielmo (*pro hac vice* forthcoming)
Erin G. Comite (*pro hac vice* forthcoming)
Alex M. Outwater (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
aoutwater@scott-scott.com

David S. Golub (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
smcelligott@sgtlaw.com
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: (205) 908-4906
kirk@woodlawifrmllc.com

Myron C. Penn (*pro hac vice* forthcoming)
**PENN & SEABORN, LLC**
53 Highway 110
Post Office Box 5335
Union Springs Alabama 36089
Telephone: (334) 738-4486
Facsimile: (334) 738-4432
myronpenn28@hotmail.com